CARL R. WILLIAMS; WHRENS CASEY WILLIAMS; AND MINORS SAMUEL LEE WILLIAMS, III; AND LINDA WILLIAMS, BY THEIR NEXT FRIEND, F. C. PASCHALL v. NORTH CAROLINA STATE BOARD OF EDUCATION; NORTH CAROLINA WILDLIFE RESOURCES COMMISSION; AND STATE OF NORTH CAROLINA

No. 77

(Filed 1 February 1974)

1. Deeds § 7— deeds prior to 1885 — inapplicability of Connor Act

Since this case involves the application of North Carolina law to deeds made and recorded prior to 1885, North Carolina's recordation statute—the Connor Act—is not controlling.

2. Deeds § 7— 19 months between execution and recordation — deed valid

Deed conveying property to grantee in defendants' chain of title was not rendered void by the lapse of 19 months between execution and recordation of the deed, since the statute in effect at the time provided for a two-year period within which a deed could be registered after its execution and delivery.

3. Deeds § 7; Registration § 4— registration of deed — relation back to date of execution for priorities

Although the applicable North Carolina law at the time of the deeds to grantees in plaintiffs' and defendants' chains of title was that registration was required to make a deed good and valid with respect to subsequent purchasers, once a deed was validly registered within the permissible statutory period, *for purposes of priority* it related back to the time of execution and delivery of the deed.

4. Deeds §§ 1, 6— requisites — presumption as to seal

In North Carolina the word "deed" ordinarily denotes an instrument in writing, signed, sealed, and delivered by the grantor whereby an interest in realty is transferred from the grantor to the grantee, and a seal is necessary to the due execution of a deed; however, the recital of the seal in the instrument raises a presumption that a seal was affixed to the original deed even though such does not appear on the face of the registered deed.

5. Deeds § 6— record of deed in evidence — presumption of seal raised

Where the original deed from a grantor to a grantee in plaintiffs' chain of title was not in evidence, but the record of the deed recited that the parties "have interchangeable set their hands and seals dated the day and year first above written," the attestation clause signed by three witnesses recited that the instrument was "sealed and delivered" in their presence, and the acknowledgment by the mayor of Philadelphia recited that the grantor appeared before him and "acknowledged the said Indenture as his Act and Deed by him freely and voluntarily signed sealed and delivered," recital of these words raised a presumption that there was a seal affixed by the grantor to his signature on the original deed.

Williams v. Board of Education

6. **Deeds § 7— delivery required**

Delivery is essential to the validity of a deed for land in North Carolina, and a deed takes effect from the time of its actual delivery.

7. **Deeds § 7— date of delivery — recitation in deed**

The date recited in the beginning of a deed is *prima facie* evidence that it was delivered on that date; however, evidence to the contrary may negate or neutralize this presumption.

8. **Deeds § 7— recordation — presumption of delivery raised**

When a deed is duly recorded as required by law, the public record thereof is admissible in evidence and raises a rebuttable presumption that the original was duly executed and delivered; however, no presumption of delivery arises from the acknowledgment of a deed by the grantor.

9. **Deeds § 7; Registration § 4— presumption of delivery of deed on date of execution — priorities**

Based on its registration on 24 May 1798 there is a presumption that the deed to the grantee in plaintiffs' chain of title was delivered, and, in the absence of evidence to the contrary, that it was delivered on its date, 13 December 1797. Based on its registration on 19 November 1798 there is a presumption that the deed to the grantee in defendants' chain of title was delivered, and, in the absence of evidence to the contrary, that it was delivered on its date, 17 April 1797; thus, under the law in effect in 1797 and 1798 the deed to the grantee in defendants' chain created superior record title and by reason thereof, defendants were entitled to summary judgment in plaintiffs' action to remove as a cloud from their title the claim of defendants to the portion of land in question and to declare plaintiffs the owner in fee of such land.

APPEAL by plaintiffs from *Rouse, J.,* at the 23 April 1973 Session of PENDER Superior Court, certified pursuant to G.S. 7A-31(a) for initial appellate review by the Supreme Court.

This action was brought by plaintiffs, pursuant to G.S. 41-10.1, to remove as a cloud from their title the claim of defendants to a portion of the lands described in the complaint and to declare plaintiffs the owner in fee of such lands. Defendants by answer denied plaintiffs' title, alleged the deed that plaintiffs claim is a cloud on their title is a part of the record title of defendants, and set forth certain further defenses, including adverse possession. Defendants also prayed that they be declared the owner of certain lands described in their further answer to the amended complaint and that the claim of plaintiffs be removed as a cloud on their title.

The parties stipulated as follows:

(1) That on 22 January 1795 the State of North Carolina granted to James Carraway 29,184 acres of land in the County of New Hanover as shown by a grant filed for record in 1795 and recorded in the Registry of New Hanover County in Record Book L-1, at page 92;

(2) That on 15 June 1796 James Carraway conveyed by warranty deed to David Allison the lands described in said grant, which deed was filed for record on 20 June 1796 and duly recorded in Book L-1, at page 273, of the Registry of New Hanover County;

(3) That the plaintiffs' claim of superior record title is derived from a deed from the said David Allison to Joshua B. Bond for this tract of land, dated 13 December 1797 and recorded 24 May 1798 in Book L-2, at page 513, of the New Hanover County Registry;

(4) That defendants' claim of superior record title is derived from a deed for said lands from David Allison to John Baker, dated 17 April 1797 and recorded on 19 November 1798 in Book L-2, at page 556, of the New Hanover County Registry;

(5) That defendants' chain of title depends upon the validity of said deed from David Allison to John Baker, and that the plaintiffs' chain of title depends upon the validity of said deed from David Allison to Joshua B. Bond;

(6) That the plaintiffs are not claiming title by adverse possession or by any means other than superior record title from the common source; to wit, David Allison; and

(7) That the deed from Allison to Baker and the deed from Allison to Bond both encompass the lands in dispute.

Defendants moved for summary judgment pursuant to Rule 56 of the North Carolina Rules of Civil Procedure on the ground that there was no genuine issue as to any material fact, and that defendants were entitled to judgment as a matter of law.

Plaintiffs, pursuant to Rule 56, moved for partial summary judgment to determine as a matter of law which of the deeds emanating from the common source (David Allison) had priority with respect to title.

The trial court, after making findings of fact and entering conclusions of law, adjudged that the deed to defendants recorded in Book 125, at page 47½, of the Registry of Pender County, North Carolina, does not constitute a cloud on plaintiffs' title since defendants have superior title from the common source. Accordingly, plaintiffs' action was dismissed.

From this judgment plaintiffs appealed, and we allowed motion for initial appellate review by the Supreme Court.

*Moore & Biberstein by R. V. Biberstein, Jr.; Wells, Blossom & Burrows by W. C. Blossom; Rountree, Clark, Rountree & Newton by George Rountree, Jr., for plaintiff appellants.*

*Attorney General Robert Morgan and Assistant Attorney General Roy A. Giles, Jr., for defendant appellees.*

MOORE, Justice.

[1]  Both plaintiffs and defendants agree that since this case involves the application of North Carolina law to deeds made *and* recorded prior to 1885, North Carolina's present recordation statute—the Connor Act—is not controlling. See 1885 Laws of North Carolina, chapter 147, now codified as G.S. 47-18.

[2]  The trial court in its judgment found that the deed from Allison to Baker under which defendants claim through mesne conveyances was dated 17 April 1797, was delivered no later than 17 July 1797, but was not recorded until 19 November 1798. Plaintiffs first contend that even if the Baker deed was executed and delivered prior to the Bond deed under which plaintiffs claim, nevertheless the Baker deed was not recorded within twelve months of its date or delivery and is therefore void. In support of this position plaintiffs rely on North Carolina's first registration law, the Act of 1715, chapter 7, § 1 [Laws of North Carolina, Potter (1821)], which provided:

> "That no conveyance or bill of sale for lands, (other than mortgage,) in what manner or form soever drawn, shall be good and available in law, unless the same shall be acknowledged by the vendor, or proved by one or more evidences, upon oath, either before the chief justice for the time being, or in the court of the precinct where the land lieth, and registered by the public register of the precinct where the land lieth, within *twelve months* after the date of the said deed, and that all deeds so done and executed,

shall be valid, and pass estates in land, or right to other estate, without livery of seizen, atturnment, or other ceremony in the law whatsoever." (Emphasis added.)

However, at a later session of the General Assembly, commencing on 12 December 1754 and continuing until 13 September 1756, the time for registering a deed after its execution and delivery was extended from twelve months to two years. This was done by the Act of 1756, chapter 58, § 2 [Laws of North Carolina, Potter (1821)], which provided in part:

" . . . [A]ll deeds and mesne conveyances of lands, tenements, and hereditaments, hereafter to be made, shall and may, at any time, within *two years* from the respective dates thereof, be acknowledged, or proved in manner aforesaid, and delivered to the registers of the counties wherein they are respectively situated." (Emphasis added.)

This two-year period within which a deed could be registered after its execution and delivery remained in effect until the passage of the Connor Act in 1885. See Code, chapter 27, § 1245 (1883); Bat. Rev., chapter 35, § 1 (1873); Rev. Code, chapter 37, § 1 (1854); Rev. Stat., chapter 37, § 1 (1837). Baker registered his deed within two years after its execution and delivery. Plaintiffs' assertion that the applicable law required registration within one year is erroneous. In view of the Act of 1756, it is unnecessary to consider the effect of the various acts passed prior to the Connor Act extending the time for registration of deeds. For a discussion of these acts, see II Mordecai's Law Lectures 1010-1011. (2d Ed. 1916).

Plaintiffs next contend that regardless of which deed was first executed and delivered, since the Bond deed was registered prior to the Baker deed, the Bond deed is superior as a matter of law. A similar contention was also raised in *Phifer v. Barnhart,* 88 N.C. 333 (1883), a leading North Carolina case discussing the pre-Connor Act rules with respect to priority of deeds, and there Justice Ruffin said:

" . . . [T]he bargainee in an unregistered deed . . . [cannot] be displaced, or defeated, by the mere act of the bargainor in making another conveyance to a third party without notice, and whose deed may be registered. . . .

"In *Morris v. Ford,* 2 Dev. Eq., 412 [17 N.C. 412 (1833)], it is said, that such a bargainee, after the execution

of his deed and before its registration, has not a mere equity in the land : he has an equity and an incomplete legal title, which will become *a perfect legal title from the time of the execution of the deed,* whenever the registration shall take effect. . . .

"Again, in *Walker v. Coltraine,* 6 Ired. Eq., 79 [41 N. C. 79 (1849)], it was declared to be an error to say that an unregistered deed confers only an equity; that it is a legal conveyance, which, although it cannot be given in evidence until registered and therefore is not a perfect legal title, yet has an operation as a deed from its delivery; and it was emphatically said, that the ignorance of such a title in one, who might afterwards buy the land, could not impair it.

"In *Wilcox v. Sparks,* 72 N.C., 208 [1875], Mr. Justice Reade, speaking for the court, says, that although a deed cannot be used to support a title until it is registered, still when registered it relates, and passes the title, as of the time of its execution. . . . "

See also *Janney v. Blackwell,* 138 N.C. 437, 50 S.E. 857 (1905) ; *Ray v. Wilcoxon,* 107 N.C. 514, 12 S.E. 443 (1890) ; *Edwards v. Dickinson,* 102 N.C. 519, 9 S.E. 456 (1889) ; *Austin v. King,* 91 N.C. 286 (1884) ; *United States v. Hiawassee Lumber Co.,* 238 U.S. 553, 568-69, 59 L.Ed. 1453, 1461, 35 S.Ct. 851, 858 (1915).

[3]   Therefore, the applicable North Carolina law at the time of the Baker and Bond deeds was that although registration was required to make a deed good and valid with respect to subsequent purchasers, once a deed was validly registered within the permissible statutory period, *for purposes of priority* it related back to the time of execution and delivery of the deed. Consequently, prior registration of the Bond deed did not necessarily make the Bond deed superior to the subsequently registered Baker deed. Both deeds, when registered, related back to the date of execution and delivery, and thus the date of execution and delivery would control and determine priority as between the two deeds. Delivery of the deeds is discussed more fully later in the opinion.

The deed from Allison to Bond, as recorded, does not show that it was under seal. Defendants contend, therefore, that the deed is void and of no effect.

[4] . In North Carolina the word "deed" ordinarily denotes an instrument in writing, signed, sealed, and delivered by the grantor whereby an interest in realty is transferred from the grantor to the grantee. *Supply Co. v. Nations,* 259 N.C. 681, 131 S.E. 2d 425 (1963); *Ballard v. Ballard,* 230 N.C. 629, 55 S.E. 2d 316 (1949). A seal is necessary to the due execution of a deed. *Dunn v. Dunn,* 242 N.C. 234, 87 S.E. 2d 308 (1955); 3 Strong, N. C. Index 2d, Deeds § 6 (1967). This Court, however, has held that the recital of the seal in the instrument raises a presumption that a seal was affixed to the original deed even though such does not appear on the face of the registered deed. In *Hopkins v. Lumber Co.,* 162 N.C. 533, 78 S.E. 286 (1913), the plaintiff in showing his chain of title introduced a copy from the registration books of a deed dated 1861. There was no seal after the grantor's name, but the instrument concluded with the phrase: "In testimony whereof I have hereunto subscribed my name and affixed my seal, this the first day of March, 1861." The Court in that case said:

> "In case of an ancient deed which is not produced, but is proved from the record, which fails to indicate in any way that the deed was sealed, there is a presumption that the deed was sealed, arising from a recital in the instrument itself that it was sealed. Jones on Real Property, secs. 1073-1075; *Aycock v. R. R.,* 89 N.C., 323; *Heath v. Cotton Mills,* 115 N.C., 202; *Strain v. Fitzgerald,* 130 N.C., 601; *Smith v. Lumber Co.,* 144 N.C., 50; *Edwards v. Supply Co.,* 150 N.C., 176; *Beardsly v. Day,* 52 Minn., 451; *Smith v. Dall,* 13 Cal., 510."

In *Jones v. Coleman,* 188 N.C. 631, 125 S.E. 406 (1924), the trial court instructed the jury as follows:

> "It appears from the evidence that the deed from Mollie L. Jones to her husband, W. A. Jones, has been burned and the original of it is not in evidence. The record of it is in evidence and there is no scroll or seal after Mrs. Jones' name on the record, but the record recites 'In testimony whereof the said Mollie L. Jones has hereunto set her hand and seal.'

> "I charge you that the recital of these words raises a presumption that there was a seal affixed by Mollie L. Jones to her signature on the original deed.

"I further charge you that no evidence has been offered
or introduced in this case to rebut that presumption and
therefore you are directed to answer the second issue
'Yes.' "

This Court, on the authority of *Hopkins,* overruled plaintiff's
exception to this instruction. See also *Peel v. Corey,* 196 N.C.
79, 144 S.E. 559 (1928) ; *Roberts v. Saunders,* 192 N.C. 191, 134
S.E. 451 (1926).

[5]   In the present case the original deed from Allison to Bond
was not in evidence, but the record of this deed recites that the
"parties have interchangeable set their hands and seals dated
the day and year first above written." Further, the attestation
clause signed by three witnesses recites that the instrument was
"sealed and delivered" in their presence, and the acknowledg-
ment by the mayor of Philadelphia recites that David Allison
appeared before him and "acknowledged the said Indenture as
his Act and Deed by him freely and voluntarily signed sealed
and delivered. . . ."

We hold that the recital of these words in the record of
the deed raises a presumption that there was a seal affixed by
Allison to his signature on the original deed. In the absence of
evidence to rebut this presumption, defendants' contention that
the Bond deed is invalid for lack of a seal is without merit.

The trial court found that the delivery of the Baker deed
occurred no later than 17 July 1797, the date of its acknowl-
edgment before the mayor of Philadelphia. Plaintiffs contend
that this finding is not supported by the evidence and that the
court should have found that the Baker deed was not delivered
until 16 July 1798, the date appearing immediately to the right
of the subscribing witnesses' names.

In this connection it is helpful to examine in some detail
the Baker deed as it appears in the record now before us. The
deed is dated 17 April 1797 and notes that it is between David
Allison and John Baker, both of Philadelphia. At the end of the
deed appears the following:

". . . In Witness whereof he the said David Allison
hath hereunto set his hand and affixed his seal the day &
year first above written [17 April 1797].

David Allison (seal)

(sealed & delivered in the presence)
of us R. C. Smith
    J. Trinchard
    Thos. Blount    16th July 1798.

Rec. the day of the Date of the above written Indenture of John Baker a party thereto the sum of five shillings current money of the said State of Pennsylvania being in full for the consideration Money therein mentioned.

                                    David Allison

R. C. Smith
J. Trinchard

Commonwealth of Pennsylvania
City of Philadelphia

On the 17th day of July, 1797 before me Hilary Baker, Mayor of the said City of Philadelphia came David Allison the grantor in the within Indenture named and acknowledged the said Indenture as his free and voluntary act and Deed and desired the same may be recorded as such according to the laws of the State of North Carolina. In testimony whereof I the Mayor aforesaid have subscribed by name and caused the seal of the said city to be affixed to these presents the 17 Day of July 1797.

                                    Hilary Baker
                                    Mayor

Thos. Blount Esq, one of the subscribing witnesses to this Deed appeared before me and made oath that on the 16 day of July last David Allison party to the said Deed acknowledged to him that the signature of 'David Allison' at the foot of the said Deed and the seal thereto annexed were his and that he had executed and delivered the same to John Baker also party thereto as the same proported [sic] to have been done on the day therein mentioned. Let it be registered.

    I. Haywood    IS    CSC [Clerk of Superior Court in
                                    New Hanover County]

    I. Haywood,        9th November 1798

Registered the 19 November 1798
R. Bradley, Regr."

Plaintiffs' assertion that the trial court erred in finding that the delivery of the Baker deed occurred no later than 17 July 1797—the date of its acknowledgment before the mayor of Philadelphia—rests essentially on two contentions. The first is that the date of 16 July 1798 appearing immediately to the right of Thos. Blount's name refers to the date of attestation by all three witnesses—Smith, Trinchard, and Blount—and consequently shows that the deed was sealed and delivered on that date.

Plaintiffs' second contention is that in the acknowledgment of the Baker deed before the mayor of Philadelphia nothing is said about the deed having been delivered. In contrast to this, in the acknowledgment of the Bond deed before this same mayor it is stated that "the grantor within written Indenture named and acknowledged the said Indenture as his Act and Deed by him freely and voluntarily signed sealed and delivered & desires that the same may as such be recorded."

Defendants, on the other hand, contend that the Baker deed was delivered on the date set forth in the deed, that is, 17 April 1797. They state this contention in their brief as follows:

"The State submits that an examination of the deed to John Baker leads inescapably to the conclusion that Thomas Blount was not a subscribing witness to the instrument at the time of execution. Rather, execution of the deed was witnessed by Smith and Trinchard, and it was then re-acknowledged before Thomas Blount on July 16, 1798, over a year later.

"Support for this position can be found in the fact that only Smith and Trinchard witnessed the receipt of the consideration on April 17, 1797. The date 16 July 1798 appears only after Blount's name. Further support can be found in the statement made by Thomas Blount before the Clerk of Superior Court in New Hanover County. Blount stated to the Clerk that David Allison had appeared before him on July 16, 1798 and acknowledged that the signature and seal at the bottom of the instrument was his. If Thomas Blount had been present as a witness when David Allison signed and sealed the deed, there would have been no need for him to appear before Blount and acknowledge the signature and seal as his own.

\*        \*        \*

"When David Allison appeared before Thomas Blount [as Blount told the Clerk he had], he acknowledged the fact that he had executed and delivered same to John Baker as the same purports to have been done 'on the day therein mentioned.' The day therein mentioned was the 'day and year first above written,' the date of the instrument [17 April 1797]."

[6-8] Delivery is essential to the validity of a deed for land in North Carolina. *Jones v. Saunders,* 254 N.C. 644, 119 S.E. 2d 789 (1961); *Elliott v. Goss,* 250 N.C. 185, 108 S.E. 2d 475 (1959); *Burton v. Peace,* 206 N.C. 99, 173 S.E. 4 (1934); 3 Strong, N. C. Index 2d, Deeds § 7 (1967). A deed takes effect from the time of its actual delivery. *Kendrick v. Dellinger,* 117 N.C. 491, 23 S.E. 438 (1895). The date recited in the beginning of a deed is prima facie evidence that it was delivered on that date. *Turlington v. Neighbors* and *Turlington v. Turlington,* 222 N.C. 694, 24 S.E. 2d 648 (1943). Evidence to the contrary, however, may negate or neutralize this presumption. *Kendrick v. Dellinger, supra.* When a deed is duly recorded as required by law, the public record thereof is admissible in evidence and raises a rebuttable presumption that the original was duly executed and delivered. *Lance v. Cogdill,* 236 N.C. 134, 71 S.E. 2d 918 (1952), and cases therein cited. See also *Vettori v. Fay,* 262 N.C. 481, 137 S.E. 2d 810 (1964). Unlike registration, no presumption of delivery arises from the acknowledgment of a deed by the grantor. *Tarlton v. Griggs,* 131 N.C. 216, 42 S.E. 591 (1902); Webster, *Real Estate Law in North Carolina* § 174 (1971).

After finding that the delivery of the Baker deed occurred not later than 17 July 1797, the trial court entered summary judgment for defendants.

If there is a genuine issue of fact, summary judgment is inappropriate. As stated in *Page v. Sloan,* 281 N.C. 697, 190 S.E. 2d 189 (1972):

"Our Rule 56 and its federal counterpart are practically the same. Authoritative decisions both state and federal, interpreting and applying Rule 56, hold that the party moving for summary judgment has the burden of 'clearly establishing the lack of any triable issue of fact by the record properly before the court. His papers are carefully scrutinized; and those of the opposing party are on the

whole indulgently regarded.' 6 Moore's Federal Practice (2d Ed. 1971) § 56.15[8], at 2439; *Singleton v. Stewart, supra* [280 N.C. 460, 186 S.E. 2d 400 (1972)]. Rendition of summary judgment is, by the rule itself, conditioned upon a showing by the movant (1) that there is no genuine issue as to any material fact, and (2) that the moving party is entitled to a judgment as a matter of law. G.S. 1A-1, Rule 56 (b); *Kessing v. Mortgage Corp., supra* [278 N.C. 523, 180 S.E. 2d 823 (1971)]."

See also *Blades v. City of Raleigh,* 280 N.C. 531, 187 S.E. 2d 35 (1972); *Koontz v. City of Winston-Salem,* 280 N.C. 513, 186 S.E. 2d 897 (1972); *Harrison Associates v. State Ports Authority,* 280 N.C. 251, 185 S.E. 2d 793 (1972).

"A deed is presumed to have been delivered at the time it bears date unless the contrary is satisfactorily shown." *Kendrick v. Dellinger, supra.*

[9]  Plaintiffs offered no evidence by affidavit or otherwise that the Baker deed was not delivered on its date, 17 April 1797, and after the passage of nearly two hundred years it seems apparent that no such evidence is available. The dates in the attestation clause and in the acknowledgment are insufficient in themselves to rebut the presumption that the Baker deed was delivered on 17 April 1797 or to raise a genuine issue as to the date of delivery. To the contrary, we think they tend to corroborate that presumption. We hold that based on its registration on 24 May 1798 there is a presumption that the Bond deed, under which plaintiffs claim, was delivered, and, in the absence of evidence to the contrary, that it was delivered on its date, 13 December 1797. We further hold that based on its registration on 19 November 1798 there is a presumption that the Baker deed, under which defendants claim, was delivered, and, in the absence of evidence to the contrary, that it was delivered on its date, 17 April 1797, months before the Bond deed. Thus, under the law in effect in 1797 and 1798 the deed to Baker created superior record title and by reason thereof defendants were entitled to summary judgment. *Phifer v. Barnhart, supra; Janney v. Blackwell, supra; Ray v. Wilcoxon, supra; Edwards v. Dickinson, supra; Austin v. King, supra; United States v. Hiawassee Lumber Co., supra.*

It is noted that the Federal courts have passed upon the question now before this Court; that is, which of these two

ancient deeds has priority. In *Williams v. Weyerhaeuser*, Civil No. 1000 (E.D.N.C., 1966), the District Court accorded priority to the Baker deed. That court correctly held that the effect of the recordation of the Baker deed, although subsequent to the Bond deed, was to pass title as of the date of execution and delivery of the Baker deed, which the court determined was at least five months before the execution of the Bond deed. This decision was affirmed by the Fourth Circuit Court of Appeals. *Williams v. Weyerhaeuser*, 378 F. 2d 7 (1967).

Summary judgment for defendants having been correctly entered, the judgment of the Superior Court of Pender County is affirmed.

Affirmed.